UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CV-22241-KING/MCALILEY

JUNE BRIDGEWATER,

    Plaintiff,

vs.

CARNIVAL CORPORATION, RAPSODY
TOURS, CHARTERS & CRUISE LIMITED,
DREAMER CATAMARAN CRUISES and
XYZ CORPORATION,

    Defendants.
_____/

## ORDER FOLLOWING *IN CAMERA* INSPECTION

Plaintiff has two motions pending before the Court: one asks the Court to compel discovery from Defendant Carnival, the other asks that discovery be compelled from Defendant Rapsody.[1] On August 31, 2011, I addressed the motions at a discovery conference, ruled on the issues that did not involve a claim of privilege, and directed Defendants to submit the documents withheld on the basis of privilege, along with an amended privilege log, for *in camera* review. [*See* DE 101]. I have conducted that *in camera* review, and issue the following orders.

**I.**    **Background**

On September 9, 2009, Plaintiff, a passenger on the Carnival Conquest, participated

---

[1] The motions are Plaintiff's Motion to Compel Rapsody's Better Responses to Plaintiff's Initial Discovery [DE 82], and Plaintiff's Motion to Compel Carnival's Better Responses to Discovery Requests [DE 93].

in a catamaran sailing excursion on Montego Bay, Jamaica, which was operated by Defendant Rapsody. Lightening struck at or near the catamaran, and Plaintiff was injured as a result. She sues Defendants[2] for negligence and related claims. [DE 57].

Plaintiff issued document requests to each Defendant, and both Defendants withhold certain responsive documents they claim are protected from disclosure by the work product doctrine. There is some duplication among those documents; that is, some of the same documents have been withheld by both Carnival and Rapsody. The documents at issue can be summarized as follows:

(1) Two "Incident Reports" prepared by Rapsody, one on the day of the accident (2 pages), the other prepared the day following the accident (4 pages);

(2) An "Accident Report" prepared by Carnival, on September 18, 2009 (12 pages);

(3) A witness statement of Margaret Farrington, taken by Orin White, the Carnival Conquest Assistant Chief of Security, on September 12, 2009 (2 pages);

(4) A "Carnival Passenger Injury Statement" written by Kathleen Shumate, on September 12, 2009 (1 page);

(5) Various emails between Rapsody and Carnival personnel, on the day of, and the day following, the accident.

**II.    Overview of applicable law**

**I.    Burden of proof**

The party claiming a privilege has the burden of proving its applicability. *Adelman*

---

[2] Two other Defendants, Dreamer Catamaran Cruises, and XYZ Corporation, do not figure in the pending motions. Use here of the term "Defendants," refers to Carnival and Rapsody only.

*v. BSA*, No. 10-22236-CIV-GOLD/GOODMAN, 2011 LEXIS 92810 * 22 (S.D. Fla. Aug. 19, 2011). Federal courts have consistently recognized the "well settled proposition that 'the party seeking the privilege has the burden of establishing all of its essential elements." *In re Air Crash Near Cali, Colombia*, 959 F. Supp. 1529, 1532 (S.D. Fla. 1997) (quoting *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 518 (N.D. Ill. 1990)). *See also*, *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2nd Cir. 1996)(rejecting attorney-client and work product claims where the party claiming those privileges failed to establish the essential elements); *In re Grand Jury Subpoenas*, 318 F. 3d 379, 384 (2nd Cir. 2003) (collecting cases).

"A failure of proof as to any element causes the claim of privilege to fail." *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 515 (M.D.N.C. 1986). "That burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *In re Bonano*, 344 F. 2d 830, 833 (2nd Cir. 1973). The party claiming the privilege must provide the court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit. *United States v. Osborn*, 561 F. 2d 1334, 1339 (9th Cir. 1977). "Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege. An improperly asserted claim of privilege is no claim of privilege at all." *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D.Del.

1970). "[S]ubmitting a batch of documents to the Court *in camera* [does not] provide an adequate or suitable substitute because the Court is often without information of what the document concerns or how it came into being or other relevant information which would enable it to determine whether the documents are privileged." *Id*.

This burden, to sustain a claim of privilege, is heavy because privileges are "not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974); *see also United States v. Bryan*, 339 U.S. 323, 331 (1950) (privileges contravene the fundamental principle that "the public . . . has a right to every man's evidence"). They must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960)).

**II.     Work product doctrine**

The work product doctrine was created to allow attorneys to make careful and thoughtful preparation for litigation, without fear that their adversaries will unfairly benefit from their efforts. *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). First recognized by the Supreme Court in *Hickman v. Taylor*, the doctrine is codified in Federal Rule of Civil Procedure 26(b)(3). It offers qualified protection for materials that are: (1) a document or a tangible thing, (2) prepared in anticipation of litigation, and (3) by or for a party, or for his

4

representatives. F.R.Civ.P. 26(b)(3); *Parker v. Stone*, No. 3:07-CV-00271 (VLB), 2009 LEXIS 33554, *15-16 (D. Conn. Apr. 21, 2009).

The Rule recognizes two types of work product: fact work product, which protects information gathered in anticipation of litigation, and opinion work product, which consists of the attorney's mental impressions, opinions, or legal theories. *Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, No. 07-61022-CIV-COHN/SELTZER, 2009 U.S. Dist. LEXIS 130423, *3-4 (S.D. Fla. June 19, 2009). Fact work product is subject to discovery "only upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id*. at *3-4 (quoting Fed. R. Civ. P. 26(b)(3)). The requesting party, therefore, carries the burden of establishing both "substantial need" and "undue hardship," and it follows that this must be done in the same fashion as the party asserting the privilege: by providing the court with facts that establish both elements, often by affidavit, and not with conclusory assertions. Opinion work product, on the other hand, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994).

With the governing law in mind, I turn to the documents at issue.

**III.    The documents**

**I.     The incident reports prepared by Rapsody**[3]

These two reports were prepared by two Rapsody employees: Delton Clark, who is identified in the documents as the "Tour Dispatcher/Supervisor," and David Chung, who is identified as a "Rapsody Tour Operator." [DE 102-1 at p. 3]. There is no clear statement on the documents themselves why they were created, or to whom they would be distributed. Both are titled "Incident Report" and identify, at the top, as the subject of the report, the Island Dreamer catamaran, and the Carnival Conquest Cruise ship.

The first incident report, dated the day of the accident (September 9, 2009), gives a factual recitation of the lightening strike, how the crew of the catamaran responded and remarks by Plaintiff and other passengers and crew.

The second incident report, dated the following day, has the same format, and again provides a factual recitation of events, but in more detail than does the first report, and includes weather conditions at the time of the excursion, the safety briefing given at the outset of the excursion, and more detail about the crew's response to the lightening strike.

Emails submitted for *in camera* review shed more light on the creation of these incident reports. In particular, there is email correspondence between Blanka Sklenarova, Carnival Conquest's Shore Excursion Manager, and David Chung at Rapsody, on September 9 and 10, 2009. Late on September 9th, Ms. Sklenarova wrote Mr. Chung thanking him for

---

[3] Both Rapsody and Carnival withhold these documents from production. The analysis here applies equally to both Defendants' privilege claims.

the "tour report," stressing the seriousness of the accident, relaying that the Carnival guests on the excursion were very upset and believed that safety procedures were not followed, and asking that Mr. Chung provide her with all details about the events. Mr. Chung responded by email that night, referencing the incident report he had transmitted earlier that day, and stating that Rapsody would do "further investigations" the next day. On September 10, 2009, he transmitted by email the second incident report. The emails thus suggest, among other things, that the Rapsody employees wrote the first incident report and sent to Carnival on their own initiative.

Rapsody supports its claim that the incident reports are protected work product with the declaration of its general manager, Donna Lee. [*See* DE 95-3]. Ms. Lee states that it is her experience that injured guests "often seek to be compensated" and that "litigation can ensue." It is the "policy of Rapsody to investigate all claims of guest injuries in anticipation of [possible] litigation . . . ." and to prepare an incident report. She further states: "[t]hese incident reports will be forwarded to our insurer so that they may be provided to appointed counsel if a lawsuit is brought by a guest. This is the primary purpose for which Rapsody creates these items." Ms. Lee adds that "incident reports are requested by Carnival Corporation following every incident involving a guest injury" and that she believes Carnival makes this request as part of its anticipation of litigation. [*Id.*].

The question to be decided here is whether the incident reports were prepared "in anticipation of litigation" as this term has been construed for the work product doctrine. The

7

difficulty in applying this concept is that in the time following an accident - or other event that might generate a lawsuit - the anticipation of litigation can evolve from an unfocused possibility, to the concrete filing of a complaint. Along the way documents may be created by persons who have in mind both the possibility of a lawsuit, and other concerns. The law is clear that if documents are prepared for a business purpose, or for some other non-litigation purpose, they fall outside the protection of the work product doctrine. Thus, "if a party prepares a document in the ordinary course of business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation." *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (collecting cases). *See also* Advisory Committee Notes to Fed. R. Civ. P. 26(b)(3), 48 F.R.D. 487, 501 (1969). It is equally clear that documents prepared by counsel or parties, or their representatives, in specific preparation for a filed lawsuit, are protected work product. *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 341 (D.C. Cir. June 3, 2011). The application of the doctrine becomes difficult for those documents generated somewhere in the middle of the spectrum. The former Fifth Circuit, in *United States v. Davis*, addressed the challenge in this way:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in possible litigation.

*United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (citations omitted).[4]  This "primary motivating purpose" language has been cited innumerable times by courts within this Circuit, and appears to be the standard followed in this Circuit.[5]

To meet its burden of proof, Rapsody rests solely on the declaration of Ms. Lee.  True to *Davis*, Ms. Lee avers that it is Rapsody's policy to "investigate all claims of guest injuries in anticipation of litigation" and to generate incident reports that are "forwarded to our insurer so that they may be provided to appointed counsel if a lawsuit is brought by a guest.  This is the primary purpose for which Rapsody creates these items."  [DE 95-3].  Rapsody would have this court simply accept Rapsody's conclusory declaration of its "primary purpose," find that Rapsody had thus met its burden of proof, and uphold the claim of privilege.

The problem with this approach is that it requires the court to suspend common sense

---

[4] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

[5] A thoughtful and encyclopedic treatise on the subject, *The Attorney-Client Privilege and the Work Product Doctrine*, notes that courts tended to use this primary motivation standard until recently, and that a "because of" standard (whether the document was prepared because of litigation) has also come into use.  Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine*, 5th Ed., Vol. II, 2007 A.B.A. Sec. Litigation.  Recognizing the difficulty of applying either standard, Epstein proposes an alternative: "Perhaps the only distinction that can be applied with any assurance of a fairly consistent result is to ask whether the document would have been prepared regardless of whether litigation was also in the offing.  If it would have been prepared regardless of whether litigation was in the offing, then there is generally no reason to accord the document work-product protection."  *Id*. at 855.  Having personally reviewed countless work product claims, I find Epstein's reformulation of the anticipation of litigation standard a useful improvement, that would allow for more accurate application.

and logic, and to ignore other evidence in the record. Ms. Lee's declaration is selective: it addresses only the possibility of litigation, and says nothing about the strong concern expressed by Ms. Sklenarova in her email, that Carnival's guests were very upset with the excursion, believing it to have been operated unsafely. Nor does Ms. Lee address the concern any responsible excursion operator would have for its ongoing relationship with Carnival, given the serious injury a Carnival guest had suffered on the excursion. It defies logic and common sense to think that Rapsody, as a contractor of Carnival, did not have a strong business interest - apart from the possibility of a future lawsuit - in assuring Carnival that its operations were conducted in a safe and reliable manner. Rapsody could accomplish this only by collecting and conveying information to Carnival about the circumstances surrounding Plaintiff's injury. That these interests were paramount, on the day of the accident and the following day, when Carnival and its guests were demanding information, is apparent from the record.

To sustain Rapsody's assertion of the privilege on this record, the court would also have to ignore the content of the incident reports themselves, which are a straightforward recitation of objective facts about the circumstances surrounding the accident. *See Jones v. Carnival Corp.*, 04-20407-CIV-JORDAN (S.D. Fla. Sept. 28, 2005, DE 136-1)(rejecting work product claim for Carnival accident report that made a "routine recording of objective facts [about] the circumstances of the accident and Carnival's remedial response."). There simply is no analysis in those reports that hints at a focus on litigation. I find that Rapsody

and Carnival have not met their burden to prove that the primary motivating purpose behind Mr. Chung and Mr. Clark writing the incident reports was to aid in possible litigation. To find otherwise would render meaningless the oft-repeated requirement that parties asserting a privilege justify that privilege with more than conclusory assertions.[6] Accordingly, I find that Rapsody's two incident reports are not protected from disclosure by the work product doctrine.

## II. Carnival's accident report

This Carnival document is dated September 18, 2009, nine days after the accident. It is on a prepared Carnival form that calls for the collection of various categories of data, to include data about the time, place and nature of the accident, identification of relevant Carnival personnel, data about the injured guest, any witnesses and ship location. The form also has a section titled "Internal Self Critical Analysis," one titled "Medical Report" and a list of attachments. It also bears a legend, at the bottom of each page, that the report was prepared under the guidance of counsel and in anticipation of litigation.

Carnival supports its claim that this document is protected work product with the declaration of Suzanne Brown Vazquez, the Guest Claims Manager for Carnival's Loss Prevention Department. [*See* DE 99-3]. Ms. Brown recites that the experience of Carnival

---

[6] This Court recognizes that in a number of cases, courts have accepted affidavits that appear to have similar conclusory assertions of a "primary purpose." *See, e.g., Alexander v. Carnival Corp.*, 238 F.R.D. 318 (S.D. Fla. 2006); *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650 (S.D. Fla. 2009), and other cases cited by Defendants. [DE 95 p. 4; DE 99, p. 4]. Nonetheless, I am persuaded by the reasoning in *Bonano*, and the many cases like it, that a party's "burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions." *In re Bonano*, 344 F. 2d 830, 833 (2nd Cir. 1973).

is that some passengers involved in accidents look for compensation for their injuries, and that exaggerated claims of accidents are frequently made. Her declaration includes the following:

> 5. It is the policy of Carnival Cruise Lines to investigate most claims of passenger injuries in anticipation of the litigation described above. When a passenger reports an incident resulting in injury, an accident report is usually prepared and photographs are taken to memorialize the results of the investigation in anticipation of litigation. In addition, statements are taken from any witnesses to the incident. The accident report form utilized by Carnival was drafted by counsel for Carnival Cruise Lines and every completed accident report, all witness statements, as well as photographs taken at the time of the accident, are then provided to counsel for Carnival.
>
> 6. These investigative procedures are followed by Carnival at the direction of Carnival's legal counsel, to provide claims handling information to Carnival Cruise Lines and defense counsel in the anticipated litigation.
>
> 7. While it is Carnival Cruise Lines' policy to prepare an accident report, take photographs, and obtain witness statements in the case of every reported claim of passenger injury, their primary function is to assist Carnival Cruise Lines' claims department and defense counsel in litigation.

[DE 99-3, ¶¶ 5-7].

It is apparent from the accident report itself, that it is a document created by counsel. Unlike Rapsody's incident reports, this report is not a straight narrative of the events of September 9, 2009; it is a directed collection of data that is clearly geared toward a possible defense against a claim. Notably, this report was finalized more than a week after the lightening strike. Unlike the Rapsody incident reports, the accident report itself supports the assertions made in the declaration, that was offered to support the claim of privilege.

Thus, on this record, I find that Carnival has shown that the primary purpose behind the accident report was to aid Carnival in possible future litigation. However, while I find that the accident report is work product, it clearly is fact work product, as opposed to work product containing mental impressions. Accordingly, given the qualified nature of work product protection, I must turn to Plaintiff's claim that she should nevertheless receive the accident report because she has a substantial need for the document and cannot, without undue hardship, obtain the substantial equivalent by other means. *See* F. R. Civ. P. 26(b)(3)(A)(ii).

Plaintiff does not make this argument in her papers as to Carnival's accident report; she does, however, make the argument as to Rapsody's incident reports. Specifically, Plaintiff claims that "[u]pon information and belief, the reports merely contain a routine recording of objective facts, such as the circumstances of the accident and the remedial responses thereto. . . . Considering that it has been almost two years since the subject incident, the information contained in the reports will likely be more accurate than any statements that Plaintiff may later obtain from the same witnesses." [DE 97 p. 3]. Because the briefing on these motions was largely duplicative, I will consider this same argument as it relates to Carnival's accident report.

As noted above, Plaintiff has the burden of proving this claim; mere conclusory assertions will not suffice. I find that Plaintiff has not met this burden. Her argument, that contemporaneous reports of events will likely be more accurate than witnesses' recollections

13

years later, could be said in almost any lawsuit, and standing alone does not establish "substantial need." Presumably Plaintiff can take the depositions of witnesses to the accident, and Carnival and Rapsody personnel, and at that time will determine whether they have particular difficulty remembering events. Notably, Plaintiff will have the benefit of the Rapsody incident reports, and the Defendants' emails, which provide far more detailed information about the events on the catamaran, than does the accident report.

In sum, I sustain Carnival's claim that the accident report is protected from disclosure by the work product doctrine.

### III.   The witness statement and passenger accident statement

These two documents are both dated September 12, 2009, three days after the accident occurred. The handwritten witness statement of Margaret Farrington (Plaintiff's sister) is on a Carnival form from the "Ship's Security Manual." The top of the form calls for certain data (to include a case number, name and other identifying information about the witness) and has a space for "taken by: rank and name," where Orin White's name and title (Carnival Conquest Assistant Chief of Security) have been handwritten. The rest of the two-page form is a handwritten narrative, apparently in Ms. Farrington's handwriting, about the events of the September 9th excursion. Ms. Farrington signed the statement, and there is a signature under "officer's signature" that presumably is Mr. White's.

The second document, titled Carnival Passenger Injury Statement, is on a prepared form that calls for various biographical data and asks for a variety of information, with each

inquiry followed by a blank line.  A legend at the top states: "The following is to be filled by the passenger in his or her handwriting."  The document has handwritten answers, and is signed by Kathleen Shumate.

In her declaration, Ms. Lee offers little information about the creation of these documents.  She states that pursuant to Carnival policy, in the case of every reported claim of passenger injury, "statements are taken from any witnesses" and are provided to Carnival counsel (along with the accident report and photographs) and that their "primary function" is to assist Carnival's claims department and counsel.  [DE 99-3, ¶¶ 5, 7].  What can't be determined from the documents themselves, or the declaration, is how involved Carnival personnel were in questioning the witness and soliciting the information on these statements.

A witness statement taken by a party's attorney or agent in anticipation of litigation is protected work product.  *See, e.g., United States v. Chatham City Corp.*, 72 F.R.D. 640, 642 (S.D. Ga. 1976).  Although Carnival's evidence is thin,[7] on this record I nevertheless find that Carnival has established that the primary motivating purpose behind the solicitation of these two statements was to aid Carnival in possible future litigation.  There simply is no

---

[7] Carnival and Rapsody have given little information to the Court.  It certainly would have been helpful for Carnival to have provided more information about how its personnel solicited these statements, to show more concretely how Carnival collected then to prepare for possible litigation. Generally, I find that the information Defendants provided here, in support of their work product claims, is disappointingly scant.  Unfortunately, this is typical of what is filed with this Court by parties who make claims of privilege.  Parties who engage in this practice do so at the risk of the Court denying what might be meritorious privilege claims, because they have not given the Court the information needed to support those claims.

suggestion in the record of a non-litigation purpose for taking these statements.

I further find that Plaintiff has not carried her burden to defeat the protection of the work product doctrine here. While Plaintiff did not raise this argument in her papers, I believe she raised it at the hearing. In any event, Plaintiff has not met her burden. One witness is the Plaintiff's sister and presumably has long ago shared her observations with Plaintiff, and the other individual presumably can be deposed. Plaintiff has not shown her substantial need for these written statements, nor has she shown that she can not get the substantial equivalent without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).

Accordingly, I sustain Carnival's assertion of the work product doctrine here.

**IV.    The emails**

Both Carnival and Rapsody withhold a series of emails, sent between employees of Carnival and Rapsody, on September 9 and 10, 2009. I have reviewed the emails carefully, and conclude that neither Rapsody nor Carnival has carried their burden to show that this correspondence is protected by the work product doctrine.

To begin, by their content, the emails offer no hint that the parties were communicating for the primary purpose of preparing for litigation. Rather, they document an ordinary and factual exchange of information. As one example, the emails include a direction from the Conquest Hotel Director to the ship's doctor to follow up with the guests, and to Shore Excursion Manger (Ms. Sklenarova) to have the tour operator convey its safety procedures.

The fact that the content of the emails might later be useful to the Defendants in litigation, does not make them protected work product. *See, e.g., Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 307 (D.N.J. 2008) ("Documents prepared for other purposes that prove useful in subsequent litigation are not attorney work-product"). Also, there are a number of different recipients of the emails, many of whom the Defendants have not bothered to identify to the court. The court can not possibly assess a claim of privilege, without the party who asserts the privilege identifying by affidavit each author and recipient of a communication, and the reasons why each person is a party to the communication.

The Defendants rely entirely upon the declarations of Ms. Lee and Ms. Brown, which have nearly identical statements concerning communications between the parties. (Ms. Lee: "Rapsody will correspond with Carnival regarding incidents in a concerted effort of both parties to investigate incidents involving guests in anticipation of litigation." [DE 95-3, ¶ 6]; Ms. Brown: "Carnival corresponds with its independent contractor shore excursion providers regarding these incidents in a concerted effort of both parties to investigate incidents involving guests in anticipation of litigation." [DE 99-3, ¶ 8]). These declarations are wholly conclusory and fall far short of the proof required to justify Defendants' claim that the emails are protected work product.[8]

---

[8] Defendants also argue that a joint defense privilege protects the emails from disclosure. The joint defense doctrine is an extension of the work product doctrine, that permits parties facing a common litigation opponent to exchange work product in order to prepare a common defense, without waiving the privilege. *Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650, 654 (S.D. Fla.

Accordingly, I conclude that the emails withheld by the Defendants must be disclosed to Plaintiff.[9]

**IV.     Conclusion**

For the reasons offered above, it is hereby ORDERED as follows:

Plaintiff's Motion to Compel Rapsody's Better Responses to Plaintiff's Initial Discovery [DE 82], and Plaintiff's Motion to Compel Carnival's Better Responses to Discovery Requests [DE 93], are further granted in part, and denied in part.  **No later than September 28, 2011**, Defendants shall produce to Plaintiff the Rapsody incident reports and the emails between Defendants.  Carnival need not produce the accident report, witness and accident statements, as they are protected work product.

DONE AND ORDERED in chambers at Miami, Florida, this 20th day of September, 2011.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:
The Honorable James Lawrence King
Counsel of record

---

2009) (collecting cases).  Having found that the emails are not protected work product, I need not consider the applicability of the joint defense doctrine.

[9] Some of the emails reference attachments which have not been provided to the court.  The attachments are part of the correspondence, thus they are responsive to the document requests (which ask for "all correspondence"), and must be produced.  Since the Defendants have not offered any argument or evidence that the attachments are privileged, those arguments, if any, have been waived.